# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

SQN CAPITAL MANAGEMENT, LLC,

    Plaintiff,

v.

ST HOLDINGS TOPCO, LLC,
et al.,

    Defendants.

Case No. 2:19-cv-1268
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

Upon written consent of the parties in this action, this case has been referred to the Undersigned pursuant to 28 U.S.C. § 636(c). (Doc. 18). The matter is currently before the Court on Plaintiff's Motion for Summary Judgment. (Doc. 20). For the reasons that follow, the Motion is **GRANTED**.

**I.    BACKGROUND**

Plaintiff "is an international finance company and a multinational alternative investment manager specializing in collateralised, non-correlated, income-producing investments."[1] Defendant ST Holdings TOPCO, LLC ("TOPCO") is a Delaware limited liability company with its principal place of business in Westerville, Ohio. (Doc. 21-1, ¶ 1). Defendant Seale A. Moorer ("Moorer") is the managing member of Defendant TOPCO. (*Id.*).

Ability Insurance Company, Inc. ("Ability") and Plaintiff executed a Sub-Advisory Agreement that became effective May 1, 2017. (Doc. 20-1 at 3–22). Under the Sub-Advisory Agreement, Plaintiff was granted authority to manage certain of Ability's assets. (*See generally*

---

[1] SQN Capital Management, *About Us – Overview* (Oct. 10, 2019), http://www.sqncapital.com/about-us/.

*id.*). In May 2018, Ability loaned $2,650,000 (the "Ability Loan") to Defendant TOPCO. (*Id.*, ¶ 4; Docs. 13-1, 13-2). Plaintiff is the servicer of the Ability Loan. (Doc. 20-1, ¶ 4). The parties to the Ability Loan executed a Note, Credit Agreement, and Springing Guaranty Agreement. (Docs. 13-1, 13-2, 13-3). Defendant TOPCO agreed to repay the "principal and interest at the times and in the manner set forth in the Credit Agreement." (Doc. 13-1 at 1). In the event of default, such as a failure to make the required monthly payments, the Note would "automatically become due and payable without notice or demand." (*Id.*). Under the Springing Guaranty Agreement, Defendant Moorer guaranteed to pay Ability for any damages suffered as a result of Defendant TOPCO's breach of the Credit Agreement. (Doc. 13-3, ¶ 1(j)).

Upon execution of the Ability Loan, Plaintiff transferred $2,650,000 to a bank account Defendant Moorer designated on behalf of Defendant TOPCO. (Doc. 20-1, ¶ 9). After May 29, 2018, Defendant TOPCO failed to make any payments on the Note. (*Id.*, ¶ 10).

Plaintiff filed its Complaint on April 5, 2019. (Doc. 1). Shortly thereafter, it filed a two-count Amended Complaint, alleging that (1) Defendant TOPCO breached the Note and Credit Agreement, (Doc 13, ¶¶ 12–20), and (2) it was entitled to judgment against Defendant Moorer under the Springing Guaranty, (*id.*, ¶¶ 21–25). Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 20), which is fully briefed and ripe for resolution.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts

to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

Defendants oppose Plaintiff's Motion on three grounds. First, Defendants argue that Plaintiff inadequately performed its accounting obligations under the Credit Agreement and therefore that any breach of the Credit Agreement by Defendant TOPCO is excused. (Doc. 21 at 7–8). Second, Defendants contend that they are entitled to set-off any liability with other assets already in Plaintiff's possession. (*Id.* at 8–10). Third, Defendants assert that a third party, not Defendant TOPCO, was responsible for payments under the Credit Agreement and, therefore, there is "a genuine issue of material fact as to the actual party that had a duty to make the payments." (*Id.* at 10–11). The Court addresses each of these arguments in turn.

The Note, Credit Agreement, and Springing Guaranty are governed by New York law. (Docs. 13-1 at 1; 13-2, ¶ 8.08(a); 13-3, ¶ 7). "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d

Cir. 2011). "Where the contract is unambiguous, courts must effectuate its plain language." *Seabury Const. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 68 (2d Cir. 2002) (collecting cases).

### A. Count 1 – Defendant TOPCO's Breach of the Note and Credit Agreement

#### 1. Adequate Performance

Defendants argue that any breach of the Credit Agreement was excused by Plaintiff's failure to adequately perform under the same. "Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) (citing *Hadden v. Consol. Edison Co. of N.Y.*, 312 N.E.2d 445 (N.Y. 1974)). "[F]or a breach of a contract to be material, it must go to the root of the agreement between the parties." *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir.1997) (internal citations omitted). The breach must be "so substantial that it defeats the object of the parties in making the contract." *Id.*

The Credit Agreement provides that "Lender shall maintain in accordance with its usual practice an account or accounts evidencing the Indebtedness of the Borrower [Defendant TOPCO] to such Lender resulting from the Term Loan made by such Lender." (Doc. 13-2, § 2.02(b); *see also id.*, § 2.02(c) ("The Lender shall maintain accounts in which it shall record (i) the amount of the Term Loan and the Interest Period applicable thereto, (ii) the amount of any principal or interest due and payable or to become due and payable from the Borrower to Lender hereunder and (iii) the amount of any sum received by the Lender hereunder for the account of the Lenders and Lender's share thereof.")). Defendants provide no evidence that Ability or Plaintiff failed to maintain such accounts. But even if they did, the Credit Agreement expressly provides that a failure to maintain such accounts "shall not in any manner affect the obligation of the Borrower

4

[Defendant TOPCO] to repay the Term Loan in accordance with the terms of this Agreement." (*Id.*, § 2.02(d)).

As the plain language of the Credit Agreement makes clear, Defendant TOPCO was obligated to make payments on the Ability Loan regardless of whether Ability or Plaintiff maintained the § 2.02 accounts. (*See id.*). Even assuming Plaintiff failed to maintain those accounts, that would not constitute a material breach of the Credit Agreement that would excuse Defendant TOPCO's breach of the same. *Cf. Frank Felix Assocs.*, 111 F.3d at 289 ("[F]or a breach of a contract to be material, it must go to the root of the agreement between the parties."). Defendants' adequate performance argument, therefore, fails as a matter of law.

### 2. *Right of Set-Off*

Defendants next argue that Plaintiff is not entitled to summary judgment because of its failure to credit Defendant TOPCO for certain revenue and assets already in Plaintiff's possession. According to them, Plaintiff gained control over certain assets of Exceptional Innovation, Inc. ("Exceptional Innovation")—a corporate entity related to Defendant TOPCO—through bankruptcy proceedings. Those assets have purportedly generated revenue for Plaintiff that Defendants maintain should have been applied as a credit to the Ability Loan.

The plain language of the Note demonstrates otherwise. It provides that:

> As security for the payment of this Note and of all other obligations and liabilities of the Borrower to the Lender, … the Borrower grants to the Lender a right of set-off against, a continuing security interest in, and an assignment and pledge of all moneys, deposits (general or special), securities and other property of the Borrower and the proceeds thereof, now or hereafter held by the Lender on deposit, in safekeeping, in transit or otherwise, at any time credited by or due from the Lender to the Borrower, or in which the Borrower shall have an interest. The Lender shall be entitled to set-off against and apply to the payment hereof the balance of any account or accounts maintained with the Lender by the Borrower … Each and every right and remedy granted to the Lender hereunder or under any agreement between the Borrower and the Lender or available at law or in equity shall be cumulative and not exclusive of any other rights, powers, privileges or

5

> remedies, and may be exercised by the Lender from time to time and as often as may be necessary in the sole and absolute discretion of the Lender.

(Doc. 13-1 at 1).

Defendants' argument, therefore, fails for two reasons. First, the Note grants Plaintiff a right of set-off only against assets in which Defendant TOPCO has an interest. *See id.* And Defendants have presented no evidence that Defendant TOPCO has an interest in Exceptional Innovation's assets, which purportedly are now in the possession of Plaintiff. As a result, even if Plaintiff wanted to set-off the revenue generated by those assets, the Note does not provide Plaintiff the right to do so.

Second, and more fundamentally, Plaintiff's right of set-off is discretionary in nature. *See id.* (stating that right of set-off is at "the sole and absolute discretion" of Plaintiff). Plaintiff may, but is not obligated, to exercise it. *See id.* Because Plaintiff was and is under no obligation to set-off the Ability Loan against any revenue generated by a third-party company, Defendants' argument fails.

### 3. *Defendant TOPCO's Responsibility for Payment*

Defendants finally argue that Defendant TOPCO was under no obligation to repay the Ability Loan. In their view, the Credit Agreement "clearly identifies Exceptional Innovation as the company making payments." (Doc. 21 at 10). Citing the amortization schedule attached to the Credit Agreement, Defendants emphasize that it "has no mention of TOPCO, but only Exceptional Innovation" and therefore contend that "there was never any intention or expectation that TOPCO was going to make any payments pursuant to the Loan." (*Id.*).

The Note and Credit Agreement make clear that Defendant TOPCO was responsible for repayment of the Loan. The Note defines Defendant TOPCO as the "Borrower" and states that Defendant TOPCO:

> promises to pay to the order of [Ability] … on or before the Final Maturity Date described in the Credit Agreement the sum of [$2,650,000.00], or, if less, the aggregate unpaid principal amount of the Loan made by the Lender to the Borrower pursuant to the Credit Agreement … together with interest thereon as set forth herein.
>
> The Borrower shall repay principal and interest on the Loan at the times and in the manner set forth in the Credit Agreement. The Borrower shall pay interest on the unpaid principal amount of the Loan at the rate, at the times and in the manner set forth in the Credit Agreement.

(Doc. 13-1 at 1). Defendant Moorer signed the Note on behalf of Defendant TOPCO as the Borrower. (*Id.* at 3).

The Credit Agreement is similarly explicit. It defines Defendant TOPCO as the "Borrower," (Doc. 13-2, § 1.01), and provides that Ability "agrees to make a Term Loan to Borrower on the Closing Date in the aggregate principal amount of $2,650,000," (*id.*, § 2.01). The Credit Agreement repeatedly refers to Defendant TOPCO's obligation to repay Ability. (*See, e.g.*, § 2.02(c) ("the amount of any principal or interest due and payable or to become due and payable from the Borrower to Lender"); *id.*, § 2.02(d) (stating that the failure to maintain certain accounts "shall not in any manner affect the obligation of the Borrower to repay the Term Loan in accordance with the terms of this Agreement"); *id.*, § 2.03(g) (stating that, in the Event of Default, "Borrower shall pay on demand, on the principal amount of the outstanding Term Loan and any overdue interest, interest at a rate of 14% per annum"); *id.*, § 2.04(a) (stating that "[t]he Borrower shall have the right to prepay [the] Term Loan …"); *id.*, § 2.08(a) ("The Borrower shall make each payment required to be made by it hereunder …"); *id.*, §§ 6.01(a)-(b) (defining an Event of Default as a "[f]ailure of the Borrower to pay any principal of the Term Loan when as the same shall become due and payable …" or a "[f]ailure of the Borrower to pay any interests on the Term Loan or any fee or any other amount … payable under this Agreement or any other Credit Document,

when and as the same shall become due and payable …"). Defendant Moorer signed the Credit Agreement on behalf of Defendant TOPCO as the Borrower. (*Id.* at 38).

Defendants, nonetheless, argue that the parties never intended for Defendant TOPCO "to make any payments pursuant to the Loan" because the header on the amortization schedule refers to Exceptional Innovation, rather than Defendant TOPCO. (Doc. 21 at 10). Defendants do not develop this argument. Although such an argument would likely be borderline frivolous in light of the plain language of the Note and Credit Agreement, they could have argued that somehow the reference to Exceptional Innovation in the amortization schedule renders the payment provisions of the Credit Agreement ambiguous. But they have not made such an argument here. (*See id.*). Nor have they cited any authority in support of their position. (*See id.*). The Court declines to develop the argument for Defendants. *See Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009), *aff'd*, 399 F. App'x 62 (6th Cir. 2010) (collecting cases) (holding that undeveloped arguments are waived).

Defendants have failed to establish a genuine issue of material fact as to Count I of the Amended Complaint. Plaintiff is entitled to summary judgment on Count I accordingly.

### B.   Count II – Defendant Moorer and the Springing Guaranty

Having concluded that Plaintiff is entitled to summary judgment on Count I of the Amended Complaint, the Court finds that Plaintiff is also entitled to summary judgment as to Count II. All of Defendants' arguments in opposition to summary judgment on Count II are premised on a finding that there is a genuine issue of material fact as to Defendant TOPCO's liability for breach of the Note and Credit Agreement. Because the Court has concluded there are no genuine issues of material fact with respect to that issue, Defendants' arguments regarding Count II fail as a matter of law.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 20) is **GRANTED**.

IT IS SO ORDERED.


Date: October 11, 2019                         /s/ Kimberly A. Jolson
                                               KIMBERLY A. JOLSON
                                               UNITED STATES MAGISTRATE JUDGE